IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AARON VICK<br><br>Plaintiff<br><br>vs.<br><br>JANETTE RODRIGUEZ, in her official capacity as Director of the Pretrial Services Program of the Commonwealth of Puerto Rico, known as OSAJ<br><br>Defendant | CIVIL NO.: 21-1552 (DRD)<br><br>RE:<br><br>Violation of the Privileges and Immunities Clause; Action for Declaratory Judgment and Injunctive Relief |

## AMENDED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW the above-named Plaintiff, Aaron Vick, by and through his undersigned attorneys, and before this Honorable Court respectfully states, alleges, and prays as follows:

### I. Nature of the Action, Jurisdiction, and Venue

1.     This is an action that seeks enforcement of the protections afforded by the Privileges and Immunities Clause of the United States Constitution. Plaintiff Aaron Vick, through this action, claims his fundamental right to pretrial release and pretrial liberty prior to trial and absent a conviction. That fundamental constitutional federal right cannot, under the law, be deprived by the Commonwealth's Pretrial Services Program ("Programa de Servicios con Antelación al Juicio" or "Oficina de Servicios con Antelación a Juicio") (hereinafter referred to as "OSAJ").

2.     Pursuant to 28 USC § 1331, this Honorable Court has subject matter jurisdiction over the parties and the claims for declaratory and injunctive relief asserted

herein since they arise under Article IV, Section 2, of the Constitution of the United States of America, which was made extensive to the Commonwealth of Puerto Rico and its officials through the 1947 amendments to the Jones Act, 48 USC § 737.

3.      Venue is proper in this Court under 28 USC § 1391(b) since the Plaintiff's claims arose within the judicial district of Puerto Rico.

4.      All actions complained from herein have been taken by Defendant Janette Rodríguez acting under color of state law and in her official capacity as Director of OSAJ.

## II. The Parties

5.      Plaintiff Aaron Vick (hereinafter "AV") is a citizen of the United States of America and a resident of the Commonwealth of Virginia.

6.      Defendant Janette Rodríguez (hereinafter "Director Rodríguez") is and has been at all pertinent times to this action OSAJ's Director. Director Rodríguez oversees the implementation of OSAJ's duties and functions and supervises compliance with all its policies and practices. She is being sued for declaratory and injunctive relief solely in her official capacity.

## III. OSAJ's History, Purpose, and Functions

7.      OSAJ traces its origin to an Order that was entered on April 28, 1988, by the late Juan Manuel Pérez Giménez, Judge, in the legendary and decades-long *Morales Feliciano* litigation, Civil No. 79-4. The April 28, 1998, Order created a temporary pilot program by the name of Expedited Bail Project (hereinafter "EBJ"). Among other functions and duties, the EBJ was empowered to post bail on behalf of defendants in criminal cases, at no cost to them, should they meet the criteria set forth by the applicable regulations.

8.      Since the EBJ's inception, it proved to be an effective and inexpensive means to secure the pretrial release of criminal defendants, who could not otherwise defray the cost of a traditional monetary bail. In so doing, the EBJ helped to alleviate the overcrowding then afflicting the Puerto Rico correctional system.

9.      The EBJ proved to be so successful that the Puerto Rico Legislature decided to copy the model and establish a permanent structure to secure the pretrial release and supervision of persons charged with criminal offenses at minimal expense to them.

10.     Accordingly, OSAJ was formally created by Law No. 177-1995 (hereinafter "Law 177") as an autonomous entity attached to the Puerto Rico Department of Corrections and Rehabilitation (hereinafter "DCR"). Its main purpose was to make recommendations to the Puerto Rico courts in determining the terms and conditions of release for defendants in criminal matters pending trial and to supervise and monitor their compliance with the conditions imposed.

11.     Law 177 empowered OSAJ to make a myriad of recommendations for the imposition of conditions for release, including, but not limited to, deferred bail. Defendants who wished to benefit from deferred bail, or any other measure of non-economic pretrial release, were required to submit to the jurisdiction of OSAJ.

12.     Through Law No. 115-2014, OSAJ was converted into a Program of the DCR, but maintained the same duties, functions, and purpose, including the capacity to recommend the imposition of deferred bail in appropriate cases and to supervise and monitor defendants under its jurisdiction.

## IV. <u>Factual Background</u>

<u>A. The botched sale of COVID-19 tests and its aftermath:</u>

13.    In March of 2020, at the beginning of the still ongoing COVID-19 pandemic, Apex General Contractors, LLC, (hereinafter "Apex") a small Puerto Rico construction company, was awarded a contract to sell One Million (1,000,000) test kits to the Puerto Rico Department of Health for the total and aggregate amount of Thirty-Eight Million Dollars ($38,000,000.00). Purportedly, the test kits were going to be supplied by Promedical, an Australian manufacturing company.

14.    Upon the issuance of Apex's purchase order, the Government of Puerto Rico authorized payment of a deposit equivalent to fifty percent (50%) of the contract amount, but the transaction was cancelled because, among other reasons, Promedical issued a public statement saying that it had never been in conversations or entered into a contract with Apex, adding that it sold rapid test kits to approved distributors for less than half the amount billed by Apex to the Puerto Rico Department of Health.

15.    The botched sale prompted an investigation by the Puerto Rico House of Representatives that uncovered numerous irregularities by various Puerto Rico officials in the emergency procurement process that resulted in the contract awarded to Apex.

16.    The legislative investigation also uncovered, as part of the highly irregular procurement process conducted by the Puerto Rico authorities, that Apex had submitted a corporate resolution with AV's forged signature, stating that AV was authorized to act on its behalf.

17.    The House of Representatives issued a report with its findings, which it referred to the Puerto Rico Department of Justice (hereinafter "PRDOJ") and several

federal law enforcement agencies, with a request that they all investigate the matter fully, given the suspected violation of penal statutes by the various Puerto Rico officials that mishandled the botched sale.

18.    The PRDOJ and the Office of the Inspector General of the U.S. Department of Health and Human Services (hereinafter "OIG") initiated separate inquiries on the matter.

19.    AV, who resided in Puerto Rico at that time, cooperated fully with both inquiries while proclaiming his innocence. He was eventually exonerated of any wrongdoing by the PRDOJ and the OIG.

20.    AV decided to leave Puerto Rico after he received a letter, dated October 29, 2020, from then Acting Secretary of Justice for the Commonwealth of Puerto Rico, a true and accurate copy of which is attached hereto as Exhibit 1.

21.    AV has been a permanent resident of Virginia since December of 2020. He lives with his wife in a house that they jointly purchased in the Virginia Beach area and works in the business that he established therein.

B. The criminal charges recently filed against AV:

22.    On November 4, 2021, AV was charged by a Special Prosecutor designated by the Puerto Rico Panel of Independent Special Prosecutor ("Panel sobre el Fiscal Especial Independiente") in four (4) criminal complaints that were filed *in absentia* and that alleged the commission of four (4) felonies stemming from the botched sale of Covid-19 rapid tests to the Puerto Rico Department of Health in March of 2020.

23.    AV was charged for allegedly aiding and abetting an attorney and resident of Puerto Rico by the name of Juan Maldonado (hereinafter "Maldonado") in the

commission of the charged criminal offenses. Maldonado was charged with a fifth offense in which AV was not named as a defendant. Interestingly, no Puerto Rico official was charged, which raises numerous concerns and questions about the Panel of Independent Special Prosecutor's capacity and jurisdiction to charge two (2) private citizens and about the propriety of those charges.

24.     Maldonado appeared before the Puerto Rico Municipal Judge that held the hearing required by Puerto Rico Rule of Criminal Procedure 6, accompanied and assisted by the counsel of his choice, who, understandably, challenged the jurisdiction of the Panel of Independent Special Prosecutor to submit the criminal complaints when no Puerto Rico official was charged.

25.     Later that same day, the Puerto Rico Municipal Judge that held the Rule 6 hearing found probable cause to arrest both Maldonado and AV and set bail at $50,000.00 for each of the charged offenses. Thus, Maldonado's bail amounted to $250,000.00 while AV's to $200,000.00.

26.     Maldonado's bail was deferred pursuant to Puerto Rico Rules of Criminal Procedure 6.1 and 218 following OSAJ's recommendation to that effect.

27.     AV did not attend the Rule 6 hearing that was held on November 4, 2021, because he was never informed of it nor contacted by anyone from the Panel of Independent Special Prosecutor. Since AV was not present at the Rule 6 hearing, no determination was made as to whether his bail would also be deferred.

28.     As soon as AV learned about the criminal charges that had been filed against him, he retained local counsel, who immediately began to take steps to arrange for AV's voluntary surrender and to seek deferment of the bail imposed.

29.    To that end, AV's counsel held three (3) separate telephone conferences with OSAJ's Supervisors. Director Rodríguez participated in the last two conferences, which were held on November 12, 2021 and November 16, 2021, respectively.

30.    During the November 16, 2021 telephone conference, AV's counsel informed Director Rodríguez that they would make AV available to be interviewed by OSAJ by videoconference as part of the investigative process that OSAJ is required to conduct to determine if a deferred bail would be recommended, but Director Rodríguez declined the invitation to do so while stating that OSAJ could only conduct interviews in person after the criminal defendant is under the custody of the Puerto Rico law enforcement officers.

31.    The position taken by Director Rodríguez is contrary not only to the Privileges and Immunity Clause but also to OSAJ's enabling act and its own Uniform Procedures Regulation, which grant OSAJ jurisdiction over every citizen that is charged with a criminal offense for which the imposition of bail is mandatory.

32.    AV meets all OSAJ's criteria to fall within OSAJ's jurisdiction and to warrant that his bail be deferred, just as Maldonado's.

33.    However, Director Rodríguez and OSAJ's employees under her supervision have taken the position that they may not recommend that AV's bail be deferred because they deem that OSAJ will not be able to adequately supervise AV during his pretrial release solely premised on the fact that he is not a Puerto Rico resident.

34.    Director Rodríguez has maintained that position notwithstanding the fact that AV's attorneys unequivocally conveyed to her that AV's Virginia residency may not and could not be taken, directly or indirectly, as a factor to deny him the deferred bail to

which he would be entitled if he was a Puerto Rico resident. Please refer to the November 12, 2021, letter that was delivered to Director Rodríguez that same date, a true and accurate copy of which is attached hereto as Exhibit 2.

35.    Given that Director Rodríguez failed to modify said position, AV has no other legal recourse but to seek the protections under the Privileges and Immunities Clause through this action since he does not have the financial means to post the $200,000.00 bail that was imposed *in absentia* and he is entitled to the same treatment received by his Co-Defendant, who is a Puerto Rico resident.

### V. <u>Constitutional Claim</u>

36.    Plaintiff repeats and incorporates all the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

37.    The Privileges and Immunities Clause, U.S. Const. art. IV, § 2, was inserted into the Constitution "to help fuse into one Nation a collection of independent, sovereign States." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948).

38.    Specifically, "the Privileges and Immunities Clause is concerned with state laws that distinguish between residents and non-residents", *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122, 1141 n. 23 (W.D. Wash. 2011), and "is triggered by discrimination against out-of-state residents on matters of fundamental concern." *A.L. Blades & Sons, Inc. v. Yerusalim*, 121 F.3d 865, 870 (3d Cir. 1997) (quoting *United Bldg. & Constr. Trades Council of Camden County and Vicinity v. Mayor and Council of the City of Camden*, 465 U.S. 208, 221 (1983). *See also Costas-Elena v. Municipality of San Juan*, 714 F. Supp. 2d 263, 271 (D.P.R. 2010) ("The

Privileges and Immunities Clause prohibits a state government from discriminating against nonresidents of that state on matters bearing on certain fundamental rights.").

39.     In *United States v. Salerno*, which involved a challenge to Bail Reform Act, the Supreme Court recognized the "general rule," under substantive principles, "that the government may not detain a person prior to a judgment of guilt in a criminal trial" unless detention satisfies a heightened level of constitutional scrutiny." *United States v. Salerno*, 481 U.S. 739, 749 (1987). The Supreme Court acknowledged "the importance and fundamental nature of" a defendant's right to physical freedom from incarceration prior to conviction. *Id*. at 750.

40.     Thus, the "right to physical freedom from incarceration prior to conviction", *Nashville Cmty. Bail Fund v. Gentry*, 496 F. Supp. 3d 1112, 1136 (M.D. Tenn. 2020), is one of the fundamental rights that activates the protections of the Privileges and Immunities Clause. *See also Schultz v. State*, 330 F. Supp. 3d 1344, 1358 (N.D. Ala. 2018) ("Criminal defendants have a constitutional right to pretrial liberty. The law presumes that defendants are innocent until the State proves otherwise.").

41.     Congress expressly extended the Clause to Puerto Rico in 1947 via statute. 48 U.S.C. § 737; *see also Mullaney v. Anderson*, 342 U.S. 415, 420 (1952). As explained in *Mullaney*, the Privileges and Immunities Clause prohibits Puerto Rico from "discriminat[ing] against citizens of the United States who are not residents of Puerto Rico." *Mullaney*, 342 U.S. at 420 n. 2.

42.     The Clause is not absolute since it does not preclude discrimination when nonresidents are shown to constitute a "peculiar source of evil." *Toomer*, 334 U.S. at 398. Discrimination against nonresidents is allowed where: (1) there is a substantial reason for

the differential treatment, and (2) the discrimination bears a substantial relationship to the state's objective." *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284 (1985).

43.    Thus, OSAJ would be justified in discriminating against AV as a nonresident defendant for purposes of deferred bail denial if, and only if, (1) the discrimination was aimed at some "peculiar source of evil," which has been described as a "substantial reason" for the discrimination, and (2) the discrimination in question had a substantial relationship to the state's objective. *Piper*, 470 U.S. at 284. When considering whether the state's objective has a substantial relationship to the discrimination, the court must look at whether there are any less restrictive means of achieving the given objective. *Barnard v. Thorstenn*, 489 U.S. 546, 552-53 (1989).

44.    The discriminatory consideration of OSAJ against AV because of his nonresident condition – as well as other factors considered by the Program when recommending a deferred bail – intends to serve the state's objective of avoiding the risks of the defendant's failed appearance, the commission of new crimes or any other interference with the orderly administration of justice. See Law No. 151-2014.

45.    In this case, as soon as AV learned of the criminal charges that had been filed against him *in absentia*, he retained counsel, who began to take steps to arrange for his voluntary surrender and to seek deferment of the bail imposed.

46.    In that respect, the "state's objective" behind OSAJ's position does not justify the discrimination against AV. When considering whether there are any less restrictive means of achieving the stated objective, the simple fact of recommending AV to a deferred bail is self-evident. In short, AV does not represent a "peculiar source of

evil" nor is state-sanctioned discrimination against him the least restrictive way of achieving the Commonwealth's objectives.

47.    Given OSAJ's untenable position, AV, who has been willing to turn himself voluntarily to the Puerto Rico authorities since he learned of the pendency of the criminal charges lodged against him, but who will not surrender his federal constitutional rights, lives under constant threat that extradition proceedings may be initiated at any time.

48.    The actions by Director Rodríguez, as previously described, deprive AV of his fundamental right to pretrial liberty prior to conviction on account of his Virginia residency, constitute a violation of the Privileges and Immunities Clause and causes AV an irreparable injury.

49.    AV has no other recourse but to seek enforcement of his federal constitutional rights through the filing and prosecution of this action.

## VI. **Prayer for Relief**

WHERFORE, AV respectfully requests the Honorable Court to:

A.    Issue a Declaratory Judgment decreeing that the actions and omissions by OSAJ's Director have deprived AV of his fundamental right to pretrial liberty prior to conviction on account of his Virginia residency and in violation of the Privileges and Immunities Clause;

B.    Grant injunctive relief prohibiting OSAJ and Director Rodríguez from refusing to recommend AV to a deferred bail premised directly or indirectly on the fact that AV is not a Puerto Rico resident;

C.    Tax Director Rodríguez with costs and attorney's fees; and

D.    Grant any other and further relief as may be deemed just and proper.

WE HEREBY CERTIFY: that, on this same date, we filed this Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of its filing to all counsel of record.

Respectfully submitted, in San Juan, Puerto Rico, on this 14th day of December, 2021.

*S/Guillermo Ramos Luiña*
GUILLERMO RAMOS LUIÑA
USDC No. 204007
gramlui@yahoo.com

Despacho Jurídico Ramos Luiña, LLC
P.O. Box 22763, UPR Station
San Juan, PR 00931-2763
Tel.: (787) 620-0527
Fax: (787) 620-0039

*S/Leonardo M. Aldridge*
LEONARDO M. ALDRIDGE
USDC No. 300011
leoaldridge@hotmail.com

ECIJA-SBGB Law Offices
Miramar Plaza, Second Floor
Santurce, PR 00907
Tel.: 787-370-9024
Fax: 787-300-3208

*Attorneys for Plaintiff Aaron Vick*