IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**AARON VICK,**

    *Plaintiff,*

    v.

**JANETTE RODRÍGUEZ, in her official capacity as Director of the Pretrial Services Program of the Commonwealth of Puerto Rico, known as OSAJ,**

    *Defendant.*

**CIVIL NO. 21-1552 (DRD)**

**OPINION AND ORDER**

Pending before the Court is Plaintiff, Aaron Vick's (hereinafter, "Plaintiff" or "Vick") *Motion for Preliminary Injunction* See Docket No. 2. Defendant, Janette Rodríguez, in her official capacity as Director of the Pretrial Services Program of the Commonwealth of Puerto Rico (hereinafter, "OSAJ" for its Spanish acronym) filed a *Response in Opposition* thereto. See Docket No. 11. A *Reply* and *Surreply* ensued shortly thereafter. *See* Docket Nos. 16 and 22, respectively. In contrast, OSAJ moved to dismiss the *Amended Complaint*. See Docket No. 29. Plaintiff filed a *Response in Opposition* thereto. See Docket No. 32. A *Reply* ensued shortly thereafter. See Docket No. 35.

For the reasons stated herein, the Court **DENIES** Plaintiff's *Motion for Preliminary Injunction* (Docket No. 2), and the Defendant's *Motion to Dismiss Amended Complaint* (Docket No. 29) is hereby **GRANTED.**

# I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 2021, Vick was charged *in absentia* by a Special Prosecutor designated by the Puerto Rico Panel of Independent Special Prosecutors (hereinafter, "PFEI", for its Spanish acronym) in four (4) criminal complaints "that alleged the commission of four (4) felonies stemming from the botched sale of Covid-19 rapid tests to the Puerto Rico Department of Health in March of 2020. Amended Complaint, Docket No 13[1], ¶ 22. Vick is a resident of the state of Virginia. Id., ¶ 5. Plaintiff's charges include allegedly aiding and abetting an attorney and resident of Puerto Rico by the name of Juan Maldonado (hereinafter, "Maldonado") in the commission of the charged criminal offenses. Id., ¶ 23. Maldonado was charged on a fifth offense in which Vick was not included. See id. However, no Puerto Rico officials were charged by the PFEI. See id.

Maldonado appeared before a Puerto Rico Magistrate accompanied by counsel as required by the Puerto Rico Rule of Criminal Procedure 6, wherein he was informed of the charges he was facing, and probable cause was found for his arrest. Id., ¶¶ 24-25. Vick was charged *in absentia* for the aforementioned offenses. Id., ¶ 25. Later that same day, bail was set for $50,000.00 as to each of the alleged offenses as to each of the defendants. Therefore, Maldonado's bail amounted to $250,000.00 whereas Vick's bail was set for $200,000.00. Id. Thereafter, Maldonado's bail was deferred pursuant to Puerto Rico Rules of Criminal Procedure 6.1 and 218 following OSAJ's recommendation to that effect. Id., ¶ 26.

---

[1] On December 14, 2021, Vick filed an *Amended Complaint*, therefore, said document became the operative pleadings of this case.

Vick was absent from the Rule 6 hearing that was held on November 4, 2021, because he was allegedly never informed of it nor contacted by anyone from the PFEI. Since Vick was not present at the Rule 6 hearing, no determination was made as to whether his bail would also be deferred. Id., ¶ 27.

According to the *Amended Complaint,* once Vick learned about the criminal charges that had been filed against him, he retained counsel, who began to take steps to arrange for Vick's voluntary surrender and to seek deferment of the bail imposed. Id., ¶ 28. In furtherance thereof, counsel held three (3) separate telephone conferences with OSAJ's supervisors. Id., ¶ 29. Defendant Rodríguez participated in the last two conferences which were held on November 12 and 16, 2021. Id. During the November 16, 2021, telephone conference, Vick's counsel informed Rodríguez they would make him available to be interviewed by OSAJ by videoconference as part of the investigative process that OSAJ is required to conduct in order to determine whether deferred bail can be recommended. Director Rodríguez declined the invitation by stating that OSAJ can only conduct interviews in person after the criminal defendant is under custody of the Puerto Rico law enforcement officers. Id., ¶ 30.

In turn, Vick argues that the position taken by Rodríguez is contrary to the Privileges and Immunity Clause and OSAJ's enabling act and its Uniform Procedures Regulations, which affords the entity jurisdiction over every citizen charged with a criminal offense for which imposition of bail is mandatory. Id., ¶ 31. Plaintiff further claims that he meets all the criteria to warrant that his bail be deferred just like Maldonado's (id., ¶ 32) but has not appeared before a Puerto Rico Magistrate for a Puerto Rico R. Crim. Rule P. 6 hearing. According to

Plaintiff, Director Rodríguez and OSAJ's employees under her supervision have taken the position that they may not recommend that Vick's bail be deferred because they deem that OSAJ will not be able to adequately supervise him during his pretrial release solely premised on the fact that he is not a Puerto Rico resident. Id., ¶ 33. Vick alleges that Director Rodríguez has maintained her position notwithstanding the fact that his attorneys have conveyed that his Virginia residency may not and [cannot] be taken, directly or indirectly, as a factor to deny him the deferred bail to which he would be entitled if he was a Puerto Rico resident. Id., ¶ 34. Lastly, Plaintiff claims to live under constant threat that extradition proceedings may be initiated at any time. Id., ¶ 47. As a result of the above, he has filed the instant *Complaint* and request for injunctive relief seeking the protections under the Privileges and Immunities Clause as he does not have the financial means to post a $200,000.00 bail that was imposed *in absentia* and he is entitled to the same treatment received by Maldonado, who is a Puerto Rico resident. Id., ¶ 35.

In turn, the Defendant argues that to this date, Vick has not appeared before the state court and met with members of OSAJ. Docket No. 11 at 3. Accordingly, telephone calls between counsel and OSAJ cannot replace the initial process that begins with Plaintiff's appearance in state court. Additionally, the Defendant claims that "OSAJ's role is not the one of a prosecutor with whom the accused can negotiate his surrender." Id. at 3. Therefore, the Defendant contends that "plaintiff filed the instant case to circumvent due process considerations, as required by the P.R. Rules of Crim. Proc. and the Law of the Office of Pretrial Services, Law No. 151 of September 6, 2014 ("OSAJ's Law 151"). Id. It is further noted

that OSAJ, [] a program of the Puerto Rico Department of Corrections and Rehabilitation (hereinafter, "DCR"), is part of the executive branch, not the judicial branch." <u>Id.</u> According to Director Rodríguez, "OSAJ cannot file a recommendation before the court obtains jurisdiction over the accused. <u>Motion to Dismiss</u>, Docket No. 29 at p. 9. Lastly, OSAJ argues that "plaintiff's request for a preliminary injunction is not ripe for adjudication because it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." <u>Id.</u> at 4; <u>see</u> <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998).

## II.      LEGAL STANDARD

### A.    *Preliminary injunction*

It is well known that "[t]he purpose of a preliminary injunction is to preserve the *status quo* freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." <u>CCM Cable Rep., Inc. v. Ocean Coast Properties, Inc.</u>, 48 F.3d 618, 620 (1st Cir. 1995). The Court also highlights that a preliminary injunction is considered an "extraordinary remedy never awarded as of right." <u>Sindi v. El-Moslimany</u>, 896 F.3d 1, 29 (1st Cir. 2018) (*quoting* <u>Winter v. Nat. Res. Def. Council</u>, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249, (2008)); <u>Carolina Catering Corp. v. Aerostar Airport Holdings, LLC</u>, 2019 WL 2003996 (D.P.R. May 6, 2019).

In order for a district court to grant a preliminary injunction, the following four elements must be satisfied: "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." <u>Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.</u>, 794

F.3d 168, 171 (1st Cir. 2015); *see*, *also*, Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (*citing* Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). "Though the district court enjoys considerable discretion in applying this test, its decision to grant or deny a preliminary injunction must be supported by adequate findings of fact and conclusions of law." JL Powell Clothing LLC v. Powell, 590 F. App'x 3, 4 (1st Cir. 2014) (*citing* TEC Eng'g Corp. v. Budget Molders Supply, Inc., 82 F.3d 542, 544–45 (1st Cir. 1996)).

**B.   *Federal Rule of Civil Procedure 12(b)(6)***

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." See Ocasio–Hernandez v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir.2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' ") (quoting Twombly, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; See e.g. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S.

544, and Iqbal, 556 U.S. 662. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. See Iqbal, 556 U.S. at 677–679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a Bivens claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint [,]" discarding legal conclusions, conclusory statements, and factually threadbare recitals of the elements of a cause of action. Iqbal, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir.2009) (quoting Iqbal, 556 U.S. at 678) (*quoting* Twombly, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 556 U.S. at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. Id.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sánchez v. Pereira–Castillo, 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)).

Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 682 (citing Twombly, 550 U.S. at 567).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." Sepúlveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir.2010) (citing Twombly, 550 U.S. at 556); Ocasio–Hernández, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 679); See Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.") (internal quotation marks omitted); See Ocasio–Hernández, 640 F.3d at 12 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda–Villarini, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert–Rosa v. Fortuño–Burset, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; See Iqbal, 556 U.S. at 681 ("To be clear, we do not reject [ ] bald allegations on the

ground that they are unrealistic or nonsensical.... It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); See Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir.2010) (the Twombly and Iqbal standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").  However, merely parroting the elements of a cause of action is insufficient. Ocasio–Hernández, 640 F.3d at 12 (*citing* Sánchez v. Pereira–Castillo, 590 F.3d 31, 49 (1st Cir.2009)).

### C.    *Federal Rule of Civil Procedure Fed. R. Civ. P. 12(b)(1)*

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." (citations omitted). Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir.2002). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." 285 F.3d at 150.

Rule 12(b)(1) provides that a complaint will be dismissed if the court lacks subject matter jurisdiction. It is settled that the standard followed by the court when considering a dismissal request under Rule 12(b)(1), is that the court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor." Vigueira v. First Bank, 140 F.3d 12, 16 (1st Cir.1998), as restated in Rolón v. Rafael Rosario & Associates, Inc., et al., 450 F.Supp.2d 153, 156 (D.P.R.2006). Moreover, [m]otions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6)." De Leon v. Vornado Montehiedra Acquisition L.P., 166 F. Supp. 3d 171, 173 (D.P.R. 2016); see Negrón-Gaztambide v. Hernández

Torres, 35 F.3d 25, 27 (1st Cir. 1994). As such, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

To determine jurisdiction under Rule 12(b)(1), the court may also review the evidence on record, including affidavits and depositions, as opposed to a dismissal request under any other subsection of Rule 12(b). Once the jurisdiction of the court is challenged by the defendant through a motion to dismiss, "it is plaintiff's burden to establish that the court has jurisdiction." Rolón, supra.

More importantly, "Federal Courts are courts of limited jurisdiction," Rolón, 450 F.Supp.2d at 156, thus, "this Court has the responsibility to police the border of federal jurisdiction" Spielman v. Genzyme Corp., 251 F.3d 1 (1st Cir.2001), and "must rigorously enforce the jurisdictional limits [standards] that Congress chooses, Del Rosario Ortega v. Star Kist Foods, 213 F.Supp.2d 84, 88 (D.P.R.2002)(citing Coventry Sewage Associates v. Dworkin Realty Co., 71 F.3d 1, 3 (1st Cir.1995), as restated in Rolón, 450 F.Supp.2d at 156. See also Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, see Willy v. Coastal Corp., 503 U.S. 131, 136–137, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) [and the collection of cases cited therein] );" Rossello–Gonzalez v. Calderon–Serra, 398 F.3d 1, 15 (1st Cir.2004)("Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case.

Bonas v. Town of North Smithfield, 265 F.3d 69, 75 (1st Cir.2001) (*citing* Irving v. United States, 162 F.3d 154, 160 (1st Cir.1998) (*en banc*)). Thus, we subject the plaintiff's choice of a federal forum to careful scrutiny. Id.)"

A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes ripeness, mootness, sovereign immunity, and subject matter jurisdiction. See Valentín v. Hospital Bella Vista, 254 F.3d 358, 362–63 (1st Cir.2001). Where subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction. See Skwira v. United States, 344 F.3d 64, 71 (1st Cir.2003). See also Murphy v. United States, 45 F.3d 520, 522 (1st Cir.1995); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir.2004). In Valentin, 254 F.3d at 362–63, the Court held that Fed.R.Civ.P. 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject matter jurisdiction," including ripeness, mootness, the existence of a federal question, diversity, and sovereign immunity.

### III.    LEGAL ANALYSIS

### A.    *The Program of Pretrial Services and Puerto Rico Rules of Criminal Procedure*

As explained by the Defendant, "OSAJ was created by Law No. 177 of August 12, 1995, as an agency of the Commonwealth of Puerto Rico." Docket No. 11 at 4. OSAJ was converted into a program under the Department of Corrections and Rehabilitation of Puerto Rico through Law No. 151 of September 6, 2014. See P.R. Laws Ann. tit. 3A, Ap. XVIII; Docket Nos. 11-1 and 21-1. Law No. 151 provides alternatives to the imposition of monetary bail such as, "(i) release of a defendant on personal recognizance; (ii) in custody of a third party; (iii) on

deferred bail; (iv) or on a condition or combination of conditions, as deemed pertinent by the judge, when the case so warrants." Docket No. 11 at 3. Said determination will depend on the court's approval.

The Pretrial Services Program was created to essentially "have the responsibility to investigate and evaluate all persons charged with certain crimes, in order to offer its recommendations to the Courts as to the possibility of . . . establishing the terms and conditions of the corresponding bail." P.R. Laws Ann. tit. 3A, Ap. XVIII, Art. 24. "The purpose of this Program will be to eliminate economic inequality in obtaining parole, in accordance with the constitutional right of a person charged with a crime to be released on bail while the criminal proceedings against him or her are taking place and until a conviction is issued, if that were the case." Id. As OSAJ is a program within the Department of Correction in Puerto Rico, the program must provide its services within its jurisdictional scope, namely, in each of the judicial regions in Puerto Rico. Id.

Pursuant to Article 25, the OSAJ's functions and duties include verifying information "on the socio-economic and educational background, employment, residence, ties with the community, and any other information ... that shall serve as a guide for the court to determine the means to [provisionally release] any person arrested who is charged with a crime." Id., Art. 25. Said article further provides that OSAJ is to supervise compliance with the conditions imposed when a person has been provisionally released, and promptly informing the court if a condition is violated. Id.

Among the conditions that OSAJ can recommend to the court when authorizing a provisional release are: (a) appear in person periodically before the Department, or the person or institution designated by the court; (b) not possess, handle, be near, or have any contact with a firearm; (c) keep from visiting a specific area, establishment or place; (d) abstain from a specific action such as using alcoholic beverages or narcotic drugs; (e) observe any schedule prescribed by the court; and (f) any other reasonable condition imposed by the court. Id. Art. 27.

As its jurisdictional scope is within the Commonwealth of Puerto Rico, OSAJ does not have offices in any of the 50 states of the United States or other territories. Therefore, OSAJ can only intervene with a defendant once the state court obtains jurisdiction over the accused. The essential element that triggers OSAJ's intervention is the court's jurisdiction over the defendant. Specifically, Law No. 151 provides that a release on deferred bail is,

> The conditional release of a person charged with a crime after appearing before the court, when the latter sets a cash bail, but allows him/her to remain free during the criminal proceeding without posting the bail set, provided the person charged with a crime meets with one or several conditions imposed on him/her by the court during his/her conditional release. Provided, that in the event it is determined that the person charged with a crime has failed to comply with any of said conditions, he/she shall be required to post bail and if he/she fails to do so, shall be imprisoned immediately, without impairing the provisions of the Rules of Criminal Procedure ...

Id., Art. 3(n) (emphasis added). Uniformly, Rule 6.1(e) of the Puerto Rico Rules of Criminal Procedure provides that,

> [p]osting bail shall not be admitted, nor a determination of freedom under his/her own recognizance, freedom in custody of a third party nor deferred bail shall be made, with regard to persons who have been charged with a crime who are outside of Puerto Rico's jurisdiction. Neither shall conditions be

imposed nor shall bail be admitted, nor shall a determination of freedom under his/her own recognizance, in custody of a third party, nor deferred bail admitted, with regard to a person who has been charged but has not been arrested, nor has appeared before a magistrate, to be informed of the crime or crime he/she has been charged with or accused of pursuant to the procedure established in Rule 22 of this appendix.

T. 34 Ap. II, § 6.1(e) (emphasis added). In fact, said rules provide that "[i]n every case the magistrate shall require the evaluation, report and recommendations of the Office of Pretrial Services concerning every person charged with an offense before making a determination as to bail, deferred bail, being released on his/her own personal recognizance or being released under the custody of a third party." T. 34 Ap. II, § 6.1(f) (emphasis added).

Therefore, pursuant to Puerto Rico law, no determinations as to bail, and bail conditions can be made with regards to individuals who have been charged with a crime but are outside the jurisdiction of Puerto Rico and have not been arrested or voluntarily appeared before a magistrate judge for the reading of the charges he is facing. Rule 6.1 also provides that "[i]n the event that probable cause for arrest is found in the absence of the accused, the bail set by the magistrate may only be modified through a motion under Rule 218." T. 34 Ap. II, § 6.1(b) (emphasis ours).

Pursuant to Rule 218, a right to bail shall be applicable to "[a]ny person arrested, for any offense, who is eligible for release on bail or under the conditions imposed pursuant to subsection (c)[2] of this rule until convicted. The court shall take into account the evaluation report and the recommendations rendered by the Office of Pretrial Services pursuant to the

---

[2] Subsection (c) provides the conditions that may be imposed while a defendant is on bail.

provisions of §§ 1301 et seq. of Title 4, in order to determine the appropriate bail amount and the imposition of the conditions deemed suitable and convenient." P.R. Laws Ann. tit. 34A, Ap. II, § 218 (emphasis ours). Evidently, an arrest or appearance before a magistrate judge is a *sine qua non* requirement for the court to consider an evaluation and report and recommendation rendered by OSAJ.

In the case at bar, Maldonado was given a deferred bail after appearing before a magistrate judge for the reading of the charges. Upon the court's intervention with Maldonado, OSAJ was then authorized to intervene in the case, and prepare an evaluation and report and recommendation for the court's approval. Vick, however, has not appeared before a Magistrate, hence, has not submitted himself to the jurisdiction of the court. Furthermore, Plaintiff has not filed a motion for modification of bail under Rule 218 of the Puerto Rico Rules of Criminal Procedure before the Puerto Rico Court of First Instance. Failing to do so, prevents OSAJ from completing the regulated process, including considering the possibility of recommending a deferral of his bail. Telephone communications cannot substitute the procedural events that must precede the consideration and concession of bail.

### B.    *Privileges and immunities*

Article IV, Section 2 of the United States Constitution provides in its pertinent part that, "[t]he citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." U.S. Const. art. IV, § 2. "[T]he Privileges and Immunities Clause was intended to create a national economic union." Supreme Ct. of New Hampshire v. Piper, 470 U.S. 274, 279–80, 105 S. Ct. 1272, 1276, 84 L. Ed. 2d 205 (1985). Its main purpose is "to help

fuse into one Nation a collection of independent, sovereign States." <u>Toomer v. Witsell</u>, 334 U.S. 385, 395, 68 S. Ct. 1156, 1162, 92 L. Ed. 1460 (1948). However, "[l]ike many other constitutional provisions, the privileges and immunities clause is not an absolute." <u>Id.</u> at 396, Namely,

> [i]t does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them.

<u>Id.</u> Therefore, "[i]t does not preclude discrimination when nonresidents are shown to constitute a 'peculiar source of evil.'" <u>Ramos v. Puerto Rico Med. Examining Bd.</u>, 491 F. Supp. 2d 238, 243 (D.P.R. 2007) (<i>quoting</i> <u>Toomer</u>, 334 U.S. at 398).

The Supreme Court has further explained that a State is not required to "always apply all its laws or all its services equally to anyone, resident or nonresident, who may request it so to do." <u>Baldwin v. Fish & Game Comm'n of Montana</u>, 436 U.S. 371, 383, 98 S. Ct. 1852, 1860, 56 L. Ed. 2d 354 (1978). In fact, "[s]ome distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States. Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." <u>Id.</u>

Accordingly, "[t]he Privileges and Immunities Clause prohibits a state government from discriminating against nonresidents of that state on matters bearing on certain fundamental rights." Costas-Elena v. Municipality of San Juan, 714 F. Supp. 2d 263, 271 (D.P.R. 2010). The Puerto Rico Foreign Relations Act extends said prohibition to Puerto Rico as follows, "[t]he rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union . . ." 48 U.S.C. § 737; see also Mullaney v. Anderson, 342 U.S. 415, 420, 72 S. Ct. 428, 431, 96 L. Ed. 458 (1952). "[T]hus, the Commonwealth may not exercise a classification based on residency that bears on those fundamental rights. A nonresident of Puerto Rico denied benefits due to such a classification—such that a resident of Puerto Rico would not have suffered the same denial—may claim relief under § 737." Costas-Elena, 714 F. Supp. 2d at 271. However, "[d]iscrimination against nonresidents is allowed where: (1) there is a substantial reason for the differential treatment, and, (2) the discrimination bears a substantial relationship to the state's objective." Ramos, 491 F. Supp. 2d at 243; see Piper, 470 U.S. at 284, 105 S.Ct. 1272.

In the instant case, Law 151 specifically provides the moment in which OSAJ's intervention is triggered during a criminal procedure. The *sine qua non* requirement of appearing before a magistrate judge before OSAJ's intervention in a criminal proceeding is applicable to residents and non-residents of the Commonwealth of Puerto Rico. It is imperative that the court acquires jurisdiction over the accused before OSAJ, a pretrial services program from the executive branch, can intervene with a case. The Court agrees with

Defendants' argument that "[Puerto Rico] needs to be able to enforce its criminal code through its agencies and procedures." Docket No. 11 at 10. As there are no courts nor OSAJ in the state of Virginia, Vick needs to appear before a Puerto Rico Magistrate in order to benefit from OSAJ's services.

## C.   *Declaratory Judgment and Preliminary Injunction*

The Declaratory Judgment Act of 1948 (hereinafter, the "Act"), 28 U.S.C. §§ 2201-2202, provides in its pertinent part that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, were or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act "serves as a medium for courts to decide the constitutionality of a governmental action before an irreparable harm is sustained by either party." Ramos v. Puerto Rico Med. Examining Bd., 491 F. Supp. 2d 238, 241 (D.P.R. 2007); see Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 71, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Particularly, "[t]he Act does not extend the court's jurisdictional scope; in fact, the Act itself expressly requires that the plaintiff's claims meet the case and controversy standard of Article III of the United States Constitution." Id.; see 28 U.S.C. § 2201(a). "Article III restricts federal court jurisdiction to 'Cases' and 'Controversies.' U.S. Const. art. III, § 2. That limitation on '[t]he judicial Power of the United States' is fundamental to the federal judiciary's role within our constitutional separation of powers." Reddy v. Foster, 845 F.3d 493, 499 (1st Cir. 2017) (*quoting* Spokeo, Inc. v. Robins, 578 U.S. 330, 337, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016); see U.S. Const.

art. III, § 2. "Two of the limitation's manifestations are the justiciability doctrines of standing and ripeness, which are interrelated; each is rooted in Article III." Id.

The 'irreducible constitutional minimum' of standing consists of three elements. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." Spokeo, 579 U.S. at 338-39, 136 S.Ct. at 1547-48 (quoting Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

In the context of constitutional questions the First Circuit has cautioned that "declaratory judgments concerning the constitutionality of government conduct will almost always be inappropriate when the constitutional issues are freighted with uncertainty and the underlying grievance can be remedied for the time being without gratuitous exploration of uncharted constitutional terrain." constitutional terrain. El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 494 (1st Cir. 1992). "Hence, courts should withhold declaratory relief as a matter of discretion if such redress is unlikely to palliate, or not needed to palliate, the fancied injury, especially when refraining from issuing a declaratory judgment 'avoid[s] the premature adjudication of constitutional issues.'" Id. (quoting Penthouse Int'l, Ltd. v. Meese,

939 F.2d 1011, 1019–20 (D.C.Cir.1991), *cert. denied*, 503 U.S. 950, 112 S.Ct. 1513, 117 L.Ed.2d 650 (1992).

Insofar as ripeness is rooted in Article III, it must be considered in order to determine whether the Court has jurisdiction to entertain this case. "The plaintiffs bear the burden of alleging facts sufficient to demonstrate ripeness. Even a facial challenge to a statute is constitutionally unripe until a plaintiff can show that federal court adjudication would redress some sort of imminent injury that he or she faces." Reddy, 845 F.3d at 501. In fact, the Supreme Court has found that "[r]ipeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 807–08, 123 S. Ct. 2026, 2030, 155 L. Ed. 2d 1017 (2003) (*quoting* Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). When determining whether an administrative action is ripe for judicial review, the Court must evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." Id. Generally, both prongs are required in order for a claim to be ripe.

Firstly, "[t]he inquiry into fitness is both a constitutional and a prudential one." Mangual v. Rotger-Sabat, 317 F.3d 45, 59 (1st Cir. 2003). Specifically, the constitutional inquiry is "grounded in the prohibition against advisory opinions, [and] is one of timing." Id. Whereas, "[t]he prudential concern is whether resolution of the dispute should be postponed

in the name of 'judicial restraint from unnecessary decision of constitutional issues, if elements of the case are uncertain, delay may see the dissipation of the legal dispute without need for decision." Id. (internal citations omitted). In turn, "the inquiry into hardship is wholly prudential." Id.  Essentially, "[i]t looks at 'whether the challenged action creates a direct and immediate dilemma for the parties.'" Roman Cath. Bishop of Springfield v. City of Springfield, 724 F.3d 78, 90 (1st Cir. 2013) (citing Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 v. Fortuño, 669 F.3d 1, 9 (1st Cir. 2012). "'Generally, a 'mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship.'" Id.

Plaintiff seeks declaratory judgment "decreeing that the actions and omissions by OSAJ's Director have deprived [Vick] of his fundamental right to pretrial liberty prior to conviction on account of his Virginia residency and in violation of the Privileges and Immunities Clause." Amended Comp., Docket No. 13 at 11.  Vick essentially argues that he does not have to be physically present in Puerto Rico to come within OSAJ's jurisdiction. "All he needs is to be accused of a crime for which the imposition of bail is mandatory." Docket No. 32 at p. 5. And since Vick has been charged with four (4) felonies in absentia and the court imposed a bail of $200,000.00 during the probable cause hearing, "he is undoubtedly within OSAJ's jurisdiction, who could begin the interview process by videoconference as suggested by his counsel." Id.

In evaluating ripeness, the Court begins with the fitness of the issues for judicial decision. Here, Law 151 and the Puerto Rico Rules of Criminal Procedure clearly provide that an accused must appear before the state court prior to OSAJ intervening, evaluating, and

making a recommendation as to bail, which can be adopted or rejected by the state court. No other remedies are available pursuant to the applicable law. The reasoning behind this is that there are no courts or OSAJ offices in any state of the continental United States. Therefore, the only way for a state court to obtain jurisdiction over an accused is by his appearance in state court. As the Defendant correctly argues, "Plaintiff's request depends on facts that are not sufficiently developed or that in fact have yet to occur." Docket No. 29 at p. 16. In any event, Vick has not filed a motion requesting modification of bail before the state court pursuant to Rule 218 of the Puerto Rico Rules of Criminal Procedure, in order to modify the bail imposed by said forum and has not made an appearance that would constitute an unequivocal submission to the court's jurisdiction. Therefore, OSAJ cannot intervene in modifying bail without a proper request through the proper state channel. Accordingly, the Court deems that Vick's claim is not fit for adjudication.

In turn, when evaluating the hardship to the parties of withholding court consideration, the Court finds a similar conundrum. To this day, Vick has not turned himself in to Puerto Rico authorities. Hence, OSAJ is not authorized to make any determination as to pretrial remedies because no petition has been filed pursuant to Rule 218 of the Puerto Rico Rules of Criminal Procedure for modification of bail. Therefore, Plaintiff fails to establish hardship as there is no present detriment in withholding the Court's consideration at this juncture.

In sum, the Court finds that Plaintiff's case is not ripe for adjudication as it rests upon contingent future events that may not occur as anticipated or may not occur at all, namely,

Plaintiff will not know OSAJ's determination as to bail deferral until OSAJ can properly intervene in this case. OSAJ's intervention is triggered upon Vick's appearance before the state court for his probable cause hearing.

Moving on, Plaintiff seeks "injunctive relief prohibiting OSAJ and Director Rodríguez from refusing to recommend [Vick] to a deferred bail premised directly or indirectly on the fact that [Vick] is not a Puerto Rico resident." Amended Comp., Docket No. 13 at 11. As previously discussed, in order for a district court to grant a preliminary injunction, the following four elements must be satisfied: "(1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." Arborjet, Inc., 794 F.3d at 171; see also, Voice of the Arab World, Inc., 645 F.3d at 32 (citing Winter, 555 U.S. at 20). "The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir.2002) (citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir.1993)).

Foremost, "if the movant 'cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.'" Shurtleff v. City of Bos., 986 F.3d 78, 85–86 (1st Cir. 2021) (citing Ryan v. U.S. Immig. & Customs Enf't, 974 F.3d 9, 18 (1st Cir. 2020)). The Court has already found that Vick's claim is not ripe for adjudication, therefore, he is not likely to succeed on the merits. By failing to appear before the Puerto Rico Court of First Instance, Plaintiff failed to submit to the court's jurisdiction. As argued by the Defendant,

a criminal process begins "with the accused's appearance before the state court ... ." Docket No. 11 at 12. Telephone communications cannot substitute the procedural events that must precede the consideration and concession of bail. This represents a stumbling block in Plaintiff's petition for injunctive relief.

Generally, the issuance of preliminary injunction "based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, (2008) (*citing* Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). Here, the Court finds no extraordinary circumstances that would warrant injunctive relief. Plaintiff has failed to exhaust the available remedies before the state court for modifying his bail conditions prior to raising them in federal court, resulting in a delay in said proceedings. This setback has prevented OSAJ from evaluating and recommending a proper remedy. Therefore, if anything, any harm as a result thereof has been self-inflicted.

When balancing the equities between the resulting harm to Vick and the harm to the state depending on the Court's ruling, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 542, 107 S.Ct. 1396, 1402, 94 L.Ed.2d. 542 (1987). Herein, the Court cannot overlook the substantial public interest involved. Namely, Law 151 and the Puerto Rico Criminal Rules of Procedure provide the applicable guidelines concerning pretrial services before conviction. Allowing Defendants to

contact OSAJ to evaluate a potential recommendation of deferred bail without being physically present in court, could establish a dangerous precedent that any defendant can arrange pretrial services without turning themselves in with the state authorities. After all, bail is precisely imposed in order to guarantee a defendant's presence in all stages of the criminal proceedings.

**C.      *Younger abstention doctrine***

Generally, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Consistent with the anti-injunction statute, federal intervention in proceedings before the state court are limited to three instances, namely: "(1) 'as expressly authorized by Act of Congress,' (2) 'where necessary in aid of [the court's] jurisdiction,' and (3) 'to protect or effectuate [the court's] judgments.' Courts have also recognized a fourth exception justifying intervention in such cases, *i.e.*, where there has been an adequate showing of 'irreparable injury.'" Robles-Ortiz v. Toledo, CV No. 05-1281 (JAG), 2005 WL 2138746 (D.P.R. Sept. 2, 2005) (*citing* Wulp v. Corcoran, 454 F.2d 826 (1st Cir.1972).

In *Younger*, the United States Supreme Court held that federal courts should abstain from enjoining pending criminal proceedings in state court absent exceedingly rare and extraordinary circumstances. Rivera-Schatz v. Rodriguez, 310 F. Supp. 2d 405, 409 (D.P.R. 2004) (*citing* Younger v. Harris, 401 U.S. 37, 53, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971)). Accordingly, the Supreme Court "articulated the federal judiciary's obligation to refrain from

adjudicating the merits of federal claims where to do so would needlessly inject federal courts into ongoing state criminal prosecutions." Brooks v. New Hampshire Supreme Ct., 80 F.3d 633, 637 (1st Cir. 1996) (emphasis ours).

Based on the fact that Vick's request for injunctive relief is not ripe for adjudication, the Court will abstain from entertaining the merits of this alternative claim. There is an ongoing state criminal prosecution, and the Court deems most beneficial if the proceedings continue in their due course said forum.

## IV.    CONCLUSION

As claimed by Vick, he "has been willing to turn himself voluntarily to the Puerto Rico authorities since he learned of the pendency of the criminal charges lodged against him." Docket No. 13 at p. 11, ¶ 47. Accordingly, "[c]onsistent with that eagerness to face those criminal charges, [Vick] retained local counsel, who immediately began to take steps to arrange for [his] voluntary surrender and to seek deferment of the bail imposed." Id, at p. 6, ¶ 28. However, five (5) months have come and gone since Plaintiff was charged in four (4) criminal complaints *in absentia*, and Vick still has not turned himself to the Puerto Rico authorities. Plaintiff has not exercised the available remedies before the state court for modifying his bail conditions prior to raising them in federal court, such as, filing a motion under Rule 218 of the Puerto Rico Rules of Criminal Procedure. The steps taken by counsel consist of telephone communications that by no means substitute a probable cause hearing process. None of the efforts alluded by Plaintiff constitute an effective submission to the state

court's jurisdiction. Yet, he claims to live under constant threat that extradition proceedings may be initiated at any time. The Court is not persuaded by Vick's arguments.

Specifically, Rule 219 of the Puerto Rico Rules of Criminal Procedure delineates the conditions when imposing bail as follows:

> (a) Before conviction.- The conditions imposed and the bail furnished at any time before conviction <u>shall insure the presence of the defendant before the magistrate or the corresponding court and his submission to all orders, summons and proceedings thereof,</u> including the pronouncement and execution of sentence as well as the appearance of the defendant at the preliminary hearing in the appropriate cases, and which in its absence the sureties shall pay a specified amount of money to the Commonwealth of Puerto Rico.

P.R. Laws Ann. tit. 34A, § 219 (2018) (emphasis ours).

Vick's failure to appear before the Puerto Rico Court of First Instance is pellucidly at odds with the intention behind the imposition of bail in the first place. Generally, the purpose of bail before conviction is to guarantee defendant's appearance during the different stages of the proceedings. <u>See</u> <u>Pueblo v. Negrón-Vázquez</u>, 9 P.R. Offic. Trans. 346 (1979). Yet, Vick insists on benefitting from deferred bail without even turning himself in.

Rest assured, this matter would be simplified if Vick would have appeared before the state court and subjected himself to OSAJ's evaluation, which in turn, would have resulted in a recommendation for his pretrial release conditions. Therefore, the Court strongly encourages Plaintiff to go through the applicable process before the state court as mandated by law.

For the aforementioned reasons, the Court **DENIES** Plaintiff's *Motion for Preliminary Injunction* (Docket No. 2), and the Defendant's *Motion to Dismiss Amended Complaint* (Docket No. 29) is hereby **GRANTED.** Judgment of dismissal is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of April, 2022.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge